**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **LLOYD & MOUSILLI, PLLC** <br> ***Plaintiff*** | § | |
| | § | **CIVIL CASE NO.** |
| **v.** | § | **4:23-CV-04094** |
| | § | **JURY DEMANDED** |
| **JAMES EGAN** <br> ***Defendant.*** | § | |

**PLAINTIFF LLOYD & MOUSILLI, PLLC'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

FERAS MOUSILLI
Attorney-in-charge
State Bar No. 24043837
S.D. Texas Bar No. 595648
**LLOYD & MOUSILLI, PLLC**
11807 Westheimer Road
Suite 550 PMB 944
Houston, TX 77077
Tel: (512) 609-0059
Fax: (281) 783-8565
*litigation@lloydmousilli.com*

**ATTORNEY FOR PLAINTIFF**
**LLOYD & MOUSILLI, PLLC**

# TABLE OF CONTENTS

TABLE OF CONTENTS .......... 2

TABLE OF AUTHORITIES .......... 3

I. STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT .......... 6

II. SUMMARY OF THE ARGUMENT .......... 7

III. STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING .......... 8

IV. ARGUMENT AND AUTHORITIES: L&M'S PLEA FOR SPECIFIC PERSONAL JURISDICTION .......... 10

A. Elements of Establishing Personal Jurisdiction .......... 10

B. Defendant Had Minimum Contacts with Texas by Purposely Availing Himself of the Benefits of the State. .......... 11

C. L&M's Cause of Action Arises Out of or Results From Defendant's Forum-Related Contacts .......... 13

D. Exercising Specific Personal Jurisdiction in this Case is Fair and Reasonable. .......... 14

V. ARGUMENT AND AUTHORITIES: L&M'S RESPONSES TO DEFENDANT'S MOTION TO DISMISS .......... 15

A. This Action Is Not Precluded Under the Full Faith and Credit Clause. .......... 15

B. L&M is Not Barred by Collateral Estoppel. .......... 17

C. The Venue Provision in Defendant's ICA Is Not Invalid. .......... 22

VI. CONCLUSION .......... 23

VII. PRAYER .......... 24

CERTIFICATE OF SERVICE .......... 26

# TABLE OF AUTHORITIES

**CASES**

*Acree v. Air Line Pilots Ass'n,*
390 F.2d 199 (5th Cir.1968) .......... 17
*Alexander v. Greenwood Hall, Inc.*,
No. 4:18-CV-04540, 2019 WL 2913953 (S.D. Tex. July 8, 2019) .......... 14, 15
*Allen v. McCurry,*
449 U.S. 90 (1980) .......... 16
*Amstadt v. U.S. Brass Corp.*,
919 S.W.2d 644 (Tex.1996) .......... 16
*Austin v. North American Forest Products,*
656 F.2d 1076 (5th Cir.1981) .......... 11
*Boyne v. Harrison*,
647 S.W.2d 82 (Tex. App. 1983) .......... 21
*Bradberry v. Jefferson Cnty., Tex.*,
732 F.3d 540 (5th Cir. 2013) .......... 17
*Brown v. Flowers Indus.,*
688 F.2d 328 (5th Cir. 1982) .......... 21
*Bureau Veritas Commodities & Trade, Inc. v. Cotecna Inspection SA*,
No. 4:21-CV-00622, 2022 WL 912781 (S.D. Tex. Mar. 29, 2022) .......... 14
*Burger King Corp. v. Macshara*,
724 F.2d 1505 (11th Cir. 1984) .......... 11
*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .......... 7, 11, 12, 14
*Calder v. Jones,*
465 U.S. 783 (1984) .......... 15, 19
*Columbia Properties Stuart, LLC v. Wilkes*,
No. 05-14369-CIV, 2006 WL 8433949 (S.D. Fla. Mar. 21, 2006) .......... 22
*Davis v. Chase Home Fin., L.L.C.*,
597 F. App'x 249 (5th Cir. 2015) .......... 15, 16
*Dixon v. TSE Int'l Inc.*,
330 F.3d 396 (5th Cir. 2003) .......... 22
*Ellison v. Daldalyan*,
No. 4:22-CV-02271, 2023 WL 2277127 (S.D. Tex. Feb. 28, 2023) .......... 10, 12
*Equitable Trust Co. v. Commodity Futures Trading Comm'n,*
669 F.2d 269 (5th Cir.1992) .......... 17
*Erie R.R. Co. v. Tompkins,*
304 U.S. 64 (1938) .......... 19
*First State Bank of Nw. Arkansas v. Georgia 4-S Invs. LLLP*,
715 F. Supp. 2d 1301 (N.D. Ga. 2010) .......... 22
*Freudensprung v. Offsore lech. Serv's*,
379 F.3d 327 (5th Cir. 2004) .......... 6
*Getty Oil Co. v. Ins. Co. of N. Am.*,
845 S.W.2d 794 (Tex. 1992) .......... 18

*Gov't Emps. Ins. Co. v. Nealey*,
262 F. Supp. 3d 153 (E.D. Pa. 2017) ... 6, 9
*Hammervold v. Blank*,
3 F.4th 803 (5th Cir. 2021) ... 18
*Hanna v. Plumer,*
380 U.S. 460 (1965) ... 20
*In re Volkswagen AG,*
371 F.3d 201 (5th Cir. 2004) ... 7
*J.M. Davidson, Inc. v. Webster*,
128 S.W.3d 223 (Tex. 2003) ... 22
*Kariuki v. Tarango*,
709 F.3d 495 (5th Cir. 2013) ... 7
*Lea v. United States*,
No. 15-292C, 2016 WL 1697941 (Fed. Cl. Apr. 25, 2016) ... 22
*Lewis v. Fresne,*
252 F.3d 352 (5th Cir.2001) ... 20
*Luv N' care, Ltd. v. Insta-Mix, Inc.*,
438 F.3d 465 (5th Cir. 2006) ... 10
*Marten v. Godwin*,
499 F.3d 290 (3d Cir. 2007) ... 19
*Matsushita Elec. Indus. Co. v. Epstein,*
516 U.S. 367 (1996) ... 16
*Matter of Garner*,
56 F.3d 677 (5th Cir. 1995) ... 7
*McFadin v. Gerber*,
587 F.3d 753 (5th Cir. 2009) ... 10, 12
*Michiana Easy Livin' Country, Inc. v. Holten*,
168 S.W.3d 777 (Tex. 2005) ... 20
*Migra v. Warren City Sch. Dist. Bd. of Educ.,*
465 U.S. 75 (1984) ... 15
*Miller Yacht Sales, Inc. v. Smith*,
384 F.3d 93 (3d Cir. 2004) ... 7, 9
*Moki Mac River Expeditions v. Drugg*,
221 S.W.3d 569 (Tex. 2007) ... 20
*Moncrief Oil Int'l Inc. v. OAO Gazprom*,
414 S.W.3d 142 (Tex. 2013) ... 20
*Mullins v. TestAmerica, Inc.*,
564 F.3d 386 (5th Cir. 2009) ... 10
*Nguyen v. Desai*,
132 S.W.3d 115 (Tex. App. 2004) ... 16, 17
*Niehaus v. Cedar Bridge, Inc.*,
208 S.W.3d 575 (Tex. App. 2006) ... 18
*Pace v. Bogalusa City Sch. Bd.,*
403 F.3d 272 (5th Cir.2005) ... 17
*Parsons Steel, Inc. v. First Ala. Bank,*
474 U.S. 518 (1986) ... 16

*PersaudBramante Apartments, L.L.C. v. Underwriters at Lloyd's of London*,
No. 23-CV-218 (ECT/DTS), 2023 WL 4473424 (D. Minn. July 11, 2023) ........................... 22
*Prince Hotel, S.A. v. Blake Marine Grp.*,
858 F. Supp. 2d 1287 (S.D. Ala. 2012)........................................................................ 21
*Prod. Promotions, Inc. v. Cousteau,*
495 F.2d 483 (5th Cir. 1974) ........................................................................... 19, 20
*Sanders v. City of Brady (In re Brady, Texas Mun. Gas Corp.),*
936 F.2d 212 (5th Cir.), *cert. denied,* 502 U.S. 1013 (1991)........................................ 7
*Sangha v. Navig8 ShipManagement Priv. Ltd.*,
882 F.3d 96 (5th Cir. 2018) ........................................................................................ 14
*Seiferth v. Helicopteros Atuneros*,
472 F.3d 266 (5th Cir. 2006) ........................................................................................ 6
*Shaikh v. Holder*,
588 F.3d 861 (5th Cir. 2009) ........................................................................................ 7
*Sims v. City of Madisonville*,
894 F.3d 632 (5th Cir. 2018) ...................................................................................... 16
*Thompson v. Dallas City Attorney's Off.*,
913 F.3d 464 (5th Cir. 2019) ...................................................................................... 16
*United States v. Asibor,*
109 F.3d 1023 (5th Cir. 1997) ...................................................................................... 7
*Wien Air Alaska, Inc. v. Brandt,*
195 F.3d 208 (5th Cir.1999) ....................................................................................... 21
*Xome Settlement Servs., LLC v. Certain Underwriters at Lloyd's, London*,
384 F. Supp. 3d 697 (E.D. Tex. 2019)......................................................................... 22

**STATUTES**

FED. R. CIV. P. 12 ....................................................................................................... 8
FED. R. CIV. P. 12(b)(2) ............................................................................................. 17
Full Faith and Credit Act, H.R. 807, 113th Cong. (2013) ............................................ 15
TEX. CIV. PRAC. & REM CODE § 15.002(a)(1)............................................................ 18

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. IV, § 1 .............................................................................................. 15

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **LLOYD & MOUSILLI, PLLC** *Plaintiff* | § § § § | |
| v. | § § § | **CIVIL CASE NO. 4:23-CV-04094 JURY DEMANDED** |
| **JAMES EGAN** *Defendant.* | § § § § | |

---

**PLAINTIFF LLOYD & MOUSILLI, PLLC'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

---

**TO THE HONORABLE COURT:**

**COMES NOW, PLAINTIFF, LLOYD & MOUSILLI, PLLC,** (**"Plaintiff"** or **"L&M"**), in the above-styled matter and files this *Plaintiff Lloyd & Mousilli, PLLC.'s Response to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint* (**"Response"**). In support thereof, Plaintiff would respectfully show the Court the following:

## I. STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT

1. Defendant's subjection to specific personal jurisdiction pursuant to L&M's claim that Defendant violated the Defend Trade Secrets Act: This Court's determination of personal jurisdiction over a non-resident defendant is reviewed *de novo. Seiferth v. Helicopteros Atuneros*, 472 F.3d 266, 270 (5th Cir. 2006); *Freudensprung v. Offsore lech. Serv's*, 379 F.3d 327, 342 (5th Cir. 2004). To establish personal jurisdiction against a motion to dismiss without an evidentiary hearing, "the plaintiff need only establish 'a prima facie case of personal jurisdiction' and is entitled to all factual disputes being drawn in its favor and its allegations taken as true." *Gov't*

*Emps. Ins. Co. v. Nealey*, 262 F. Supp. 3d 153, 162 (E.D. Pa. 2017) (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)). In the instant case, Defendant is subject to specific personal jurisdiction related to Plaintiff's tort claim against him and Plaintiff has established a prima facie case there of in its First Amended Complaint, Response to Defendant's Motion to Dismiss and this Response. (*See* Pl.'s First Am. Compl., ECF No. 8., and Pl.'s Resp. to Def.'s Mot. to Dismiss, ECF No. 9.)

2. L&M's ability to bring the instant case is not barred by (1) the Full Faith and Credit Clause or (2) collateral estoppel: The Court's decision to give full faith and credit to a state court judgment is a question of law and as such is reviewed *de novo*. *Matter of Garner*, 56 F.3d 677, 679 (5th Cir. 1995); *Sanders v. City of Brady (In re Brady, Texas Mun. Gas Corp.),* 936 F.2d 212, 217 (5th Cir.), *cert. denied,* 502 U.S. 1013 (1991). The doctrine of collateral estoppel is a question of law, and therefore reviewed *de novo*. *Kariuki v. Tarango*, 709 F.3d 495, 506 (5th Cir. 2013); *Shaikh v. Holder*, 588 F.3d 861, 863 (5th Cir. 2009). L&M is not barred by either of these doctrines because res judicata does not apply and the instant case is *not* identical to the state action.

3. Validity of the venue clause in Defendant's Independent Contractor Agreements: The Fifth Circuit reviews all questions concerning venue under the abuse of discretion standard. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004); *United States v. Asibor,* 109 F.3d 1023, 1037 (5th Cir. 1997). The issue at hand here is whether the venue provision in Defendant's Independent Contractor Agreement sufficiently establishes venue, or in the alternative, whether the venue provision is valid in deciding "whether a defendant has 'purposefully invoked the benefits and protections of a State's laws for jurisdictional purposes.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 481–82 (1985) (citation omitted).

## II. SUMMARY OF THE ARGUMENT

4. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (**"Motion to Dismiss"**) should be denied as Plaintiff herein effectively rebuts every single one of Defendant's arguments presented in his motion. Further, as is required by Rule 12 of the Federal Rules of Civil Procedure, Plaintiff has conclusively established specific personal jurisdiction in relation to its claim that Defendant violated the Defend Trade Secrets Act (**"DTSA claim"**) by pleading the necessary facts and arguments in this Response and in its First Amended Complaint. FED. R. CIV. P. 12; (Am. Compl. ¶¶ 4–16). Plaintiff has also pled the necessary facts to establish venue in this Court in its First Amended Complaint. (Am. Compl. ¶¶ 18–22.)

5. Specifically, Defendant's Motion should be denied in its entirety for the following reasons:

- L&M has now sufficiently pled specific personal jurisdiction under this Court's standard by establishing that:
  - A. Defendant has minimum contacts with Texas by purposefully availing himself of the benefits of the state,
  - B. L&M's cause of action arises out of or results from Defendant's forum-related contacts, and
  - C. Exercising specific personal jurisdiction in this case is fair and reasonable.
- L&M has successfully rebutted each and every one of Defendant's arguments in his Motion to Dismiss by conclusively showing that:
  - A. This action is not precluded under the Full Faith and Credit Clause,
  - B. L&M is not barred by collateral estoppel, and
  - C. The venue clause in Defendant's Independent Contractor Agreements is not invalid.

## III. STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

6. Plaintiff previously filed its Original Petition and Application for Injunctive Relief in the 215th District Court of Harris County, Texas on May 1, 2023. (Pl.'s Original Pet., ECF No. 6-2.)

7. On May 2, 2023, the state court granted Plaintiff's request for a Temporary Restraining Order against Defendant through May 16, 2023, later extending the Order until May 30, 2023. (TRO & Extension, Ex. A.)

8. On May 16, 2023, the state court granted Plaintiff's request and issued a Temporary Injunction against Defendant. (Order Granting Temp. Inj., Ex. B.)

9. On June 26, 2023, Defendant filed his Special Appearance in the state court action. (Def.'s Special Appearance, ECF No. 6-3.)

10. On July 14, 2023, Plaintiff filed its Response to Defendant's Special Appearance. (Pl.'s Resp. to Def.'s Special Appearance, ECF No. 6-4.)

11. On July 19, 2023, the state court granted Defendant's Special Appearance and dismissed the action for lack of personal jurisdiction. (Order Granting Def.'s Special Appearance, ECF No. 6-5.)

12. On October 27, 2023, Plaintiff filed its Original Complaint and Request for Injunctive Relief in this Court. (Pl.'s Original Compl., ECF No. 1.)

13. On December 14, 2023, Defendant responded with his Motion to Dismiss for Lack of Personal Jurisdiction. (Def.'s Mot. to Dismiss, ECF No. 6.)

14. On December 26, 2023, Plaintiff filed its First Amended Complaint and Request for Injunctive Relief. (Am. Compl., EFC No. 8.) Plaintiff therein pled the facts necessary to establish specific personal jurisdiction and venue. (Am. Compl. ¶¶ 13–22.)

15. On December 26, 2023, Plaintiff filed its Response to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. (Pl.'s Resp. to Def.'s Mot. to Dismiss, EFC No. 9.)

16. On January 2, 2024, Defendant filed his Reply to Plaintiff's Response to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. (Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss, EFC No. 10.)

17. On January 9, 2024, Defendant filed his Motion to Dismiss Plaintiff's First Amended Complaint. (Def.'s Mot. to Dismiss Pl.'s First Am. Compl., EFC No. 11.)

18. Plaintiff now files its Response to Motion to Dismiss Plaintiff's First Amended Complaint.

## IV. ARGUMENT AND AUTHORITIES: L&M'S PLEA FOR SPECIFIC PERSONAL JURISDICTION

### A. Elements of Establishing Personal Jurisdiction

19. To establish personal jurisdiction against a motion to dismiss without an evidentiary hearing, "the plaintiff need only establish 'a prima facie case of personal jurisdiction' and is entitled to all factual disputes being drawn in its favor and its allegations taken as true." *Gov't Emps. Ins. Co. v. Nealey*, 262 F. Supp. 3d 153, 162 (E.D. Pa. 2017) (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)). In the instant case, Defendant is subject to specific personal jurisdiction under his violation of the DTSA.

20. This Court has consistently ruled that it may exercise personal jurisdiction over a nonresident if: "(1) the long-arm statute of the forum state allows the exercise of personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction over that defendant is consistent with [the] Fourteenth Amendment to the United States Constitution." *Ellison v. Daldalyan*, No. 4:22-CV-02271, 2023 WL 2277127, at *2 (S.D. Tex. Feb. 28, 2023) (citing *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009)). After consolidating these requirements, since the Texas long-arm statute extends to the limits of due process, this Court has held that specific jurisdiction can be established in a suit related to the Defendant's contacts with the state of Texas, so long as it passes the Fifth Circuit's three-pronged test for specific jurisdiction. *See Ellison,* 2023 WL 2277127, at *3. *See also McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009); *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).

21. Under this analysis, the Court will examine the following: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2)

whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Ellison,* 2023 WL 2277127, at *3 (quoting *McFadin*, 587 F.3d at 759). These requirements can best be analyzed by splitting them up and measuring the instant case against each element.

**B. Defendant Had Minimum Contacts with Texas by Purposely Availing Himself of the Benefits of the State.**

22. Defendant argues that the venue provision in his Independent Contractor Agreements (**"ICAs"**) is invalid to establish jurisdiction. (*See* Def.'s Mot. 11; ICAs 3, 7, ECF No. 1-1.) Even if Plaintiff concedes this, the Supreme Court has specifically ruled that choice-of-law provisions, even if considered invalid in respect to establishing personal jurisdiction, should be considered in deciding "whether a defendant has 'purposefully invoked the benefits and protections of a State's laws for jurisdictional purposes.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 481–82 (1985) (citation omitted). *Burger King* is a landmark decision in jurisdictional disputes, having been cited over 90,000 times, and clearly supports specific personal jurisdiction in cases such as this. While the *Burger King* Court noted that a choice-of-law provision alone does not confer jurisdiction, it held that when combined with defendant's relationship with plaintiff and the fact that plaintiff's headquarters existed in the state in question, "[the provision] reinforced his deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." *Id.* at 482. The Court cited Judge Johnson's dissent in the 1lth Circuit, agreeing that the defendant "'purposefully availed himself of the benefits and protections of [the State]'s laws' by entering into contracts expressly providing that those laws would govern franchise disputes." *Burger King Corp. v. Macshara*, 724 F.2d 1505, 1513 (11th Cir. 1984) (Johnson, dissenting), *rev'd sub nom. Burger King,* 471 U.S. at 462 (citation omitted). The holding in *Burger King* is conclusive on this issue in the case at bar. Furthermore, the nonresident defendant in *Burger King* had even fewer ties to the

state in which the case was set than Defendant Mr. Egan does to Texas. The defendant in *Burger King* had "no physical ties," never negotiated with anyone in the state, sent mail there, or even visited the state. *Burger King,* 471 U.S. at 479, 488. Even under those circumstances, the Court ruled that the state *did* indeed have jurisdiction over the defendant based on a choice-of-law clause much like that in Defendant's ICA. *Id.* at 487*;* (ICAs 3, 7).

23. Further, *Burger King* considers the "purposeful availment" requirement satisfied if "the defendant 'deliberately' has engaged in significant activities within a State or has created 'continuing obligations' between himself and residents of the forum." *Burger King,* 471 U.S. at 475-476 (citations omitted). By doing so, the Court held that the defendant "has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King,* 471 U.S. at 476. Mr. Egan has indeed created "continuing obligations" between himself and residents of Texas, as he signed two contracting agreements with them and as such was obligated to perform under these agreements. (Am. Compl. ¶¶ 9–10; ICAs 1, 5.) Moreover, most of the people Mr. Egan reported to or for whom he was obligated to work are residents of Texas. (Am. Compl. ¶¶ 13–14.) As such, this clearly satisfies the "purposeful availment" standard.

24. Despite Defendant's argument that the word "of" somehow bars federal courts from hearing this case (discussed below), the venue clause in his ICA to which he refers still sufficiently fulfills the "minimum contacts" requirement. (*See* Def.'s Mot. 11–13.) This Court has held that "minimum contacts" can be established if "defendant's conduct shows that [he] 'reasonably anticipates being haled into court' in the forum state." *Ellison,* 2023 WL 2277127, at *2 (quoting *McFadin*, 587 F.3d at 759). The ICAs in question contain a clause stating, "This Agreement shall

be governed in all respects by the laws of the United States and by *the laws of the State of Texas*. The courts of Houston, *Texas* shall be the exclusive forum for any litigation or dispute resolution." (Am. Compl. ¶ 7; ICAs 3, 7 (emphasis added).) Regardless of whether Defendant believes this clause applies to federal or state court, the contract clearly states that his contracting work with Plaintiff is governed by and subject to litigation in Texas. *Id.* In fact, the very argument that Defendant makes, that the venue clause applies only to Texas state courts, proves that he reasonably anticipated being haled into court in the state. (*See* Def.'s Mot. 11–13.) Even if this clause only referred to Texas state court as Defendant argues it does, it obviously refers to the state of Texas as the forum in which any litigation would occur. (Am. Compl. ¶ 7; ICAs 3, 7.)

**C. L&M's Cause of Action Arises Out of or Results From Defendant's Forum-Related Contacts.**

25. L&M's cause of action, violation of the DTSA, is undeniably related to and resulting from Defendant's contacts in Texas. Though L&M is a remote law firm, it is centered in Houston, Texas, where L&M's accounts, support services, mailing address, and its partners are based. (Am. Compl. ¶¶ 11–12.) Further, a large majority of L&M's clients reside in Texas, and as such, most individuals that Defendant worked with during his time at L&M are indeed Texas residents or entities. (Am. Compl. ¶¶ 13–14.) Defendant's relationships with these clients and access to their files are the very circumstances from which Plaintiff's DTSA claim arises. (Am. Compl. ¶¶ 19–20.) For instance, L&M works with a premier trademark engine based in Houston, Texas, whose sensitive information, trade secrets, and business details Defendant was privy to in his work with L&M. (Am. Compl. ¶¶ 48–50.) Perhaps one of the more significant instances upon which L&M's DTSA claim rests is that Defendant unlawfully accessed and downloaded sensitive business details and trade secrets related to this trademark engine. (Am. Compl. ¶ 50.) Not only did Defendant's action harm L&M as it endangered their relationship with a valuable contact that provides it with

hundreds of referrals, but the information unlawfully downloaded by Defendant was provided from, and exists in, the trademark engine's business in Houston, Texas. (Am. Compl. ¶¶ 48–50.) Moreover, the violations committed by Defendant all originate from his contacts with L&M, its partners, or its clients (most of whom live in Texas), undeniably linking his contacts with the acts committed by him. (Am. Compl. ¶¶ 12–13.)

**D. Exercising Specific Personal Jurisdiction in this Case is Fair and Reasonable.**

26. In a case similar to the instant one, this Court has relied on the following factors in determining this standard:

> (1) the burden on the nonresident defendant of having to defend itself in the forum, (2) the interests of the forum state in the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interests of the states in furthering fundamental social policies.

*Bureau Veritas Commodities & Trade, Inc. v. Cotecna Inspection SA*, No. 4:21-CV-00622, 2022 WL 912781, at *5 (S.D. Tex. Mar. 29, 2022) (citing *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 102 (5th Cir. 2018)); *see also Burger King,* 471 U.S. at 477. In *Buena Veritas,* when analyzing the first standard of review, this Court held that the burdens of a nonresident Defendant are "outweighed by Texas's interest in resolving the case—involving the alleged misappropriation of trade secrets of a Texas business—as well as [Plaintiff's] interest in obtaining relief." *Bureau Veritas*, 2022 WL 912781, at *5 (citation omitted).

27. Further, this Court stated that, while litigating in a state other than his own is a significant burden on Defendant, Plaintiff "would be equally burdened" if the case were litigated in Defendant's state. *See Bureau Veritas*, 2022 WL 912781, at *5. This Court should apply the same holdings in the instant case, as (1) the burden on Defendant would be equally placed on Plaintiff if jurisdiction in this District were denied, (2) Texas has a vested interest in resolving the misappropriation of trade secrets, (3) Plaintiff suffered damages in its business due to Defendant's

misappropriation and is entitled to convenient and effective relief, (4) Texas is the most efficient jurisdiction for resolving these controversies as those damaged by Defendant's actions who may be deposed, including Plaintiff and its counsel, are based in Texas, and (5) exercising jurisdiction in this case in no way harms the shared interests of the states in furthering social policies.

28. Notably, in his argument against personal jurisdiction, Defendant cites a case from this Court, claiming that it supports his Motion to Dismiss solely because the Plaintiff in the cited case included "more facts" supporting jurisdiction in its Complaint than L&M did in this instant case. (Def.'s Mot. 7); *see Alexander v. Greenwood Hall, Inc.*, No. 4:18-CV-04540, 2019 WL 2913953 (S.D. Tex. July 8, 2019). It should be noted that since filing his Motion, Plaintiff has amended its complaint to plead specific jurisdiction arising from a tort claim and sufficiently establishes a prima facie case for this jurisdiction above in Response to Defendant's Motion, thereby nullifying any argument Defendant has regarding L&M's plea for jurisdiction. (Am. Compl. ¶¶ 3–16.) Further, the facts pled by *Alexander* are largely contested by Defendant and are not comparable to the instant case as *Alexander* provided no legal basis for its jurisdiction, only alleging general personal jurisdiction. *See* 2019 WL 2913953, at *2–3.

29. As is discussed below, federal courts have a distinct standard of review in assessing specific personal jurisdiction arising from a tort claim, the *Calder* "effects" test. *See Calder v. Jones,* 465 U.S. 783 (1984). This Court notes in *Alexander* that the *Calder* test only applies when the tort is directed toward the forum state, which distinguishes *Alexander* from this case as is discussed below. *See Alexander,* 2019 WL 2913953, at *11 (citing *Calder,* 465 U.S. 783).

## V. ARGUMENT AND AUTHORITIES: L&M'S RESPONSES TO DEFENDANT'S MOTION TO DISMISS

### A. This Action Is Not Precluded Under the Full Faith and Credit Clause.

30. The Full Faith and Credit Clause referenced by Defendant originates in Article IV of the U. S. Constitution and initially required that state courts respect the judgments of courts from other states. U.S. Const. art. IV, § 1. However, the Full Faith and Credit Act, passed in 2013, expanded the enforcement of this clause so that federal courts must also honor the judgments of state courts. Full Faith and Credit Act, H.R. 807, 113th Cong. (2013). Under this law, Courts have ruled that "a federal court is required to give a state-court judgment the same preclusive effect that it would have under the law of the state in which it was rendered." *Davis v. Chase Home Fin., L.L.C.*, 597 F. App'x 249, 252 (5th Cir. 2015) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984)). For instance, if a judgment were rendered by a Texas state court, a federal court must apply Texas rules of preclusion in its exercising of the Full Faith and Credit clause. *Davis,* 597 F. App'x at 252 (citing *Matsushita Elec. Indus. Co. v. Epstein,* 516 U.S. 367, 373 (1996)); *see also Parsons Steel, Inc. v. First Ala. Bank,* 474 U.S. 518, 523 (1986). Referencing a case originating in Mississippi state court, the Fifth Circuit ruled that a federal court should examine whether a case is precluded by the Full Faith and Credit Clause by using that state's standard for res judicata. *Davis,* 597 F. App'x at 252. This principle has been affirmed by the courts, perhaps most definitively in this very Circuit, as it reaffirmed Supreme Court's precedent in *Allen v. McCurry* that "the preclusive effect of state-court judgments hinge[s] on… state law." *Thompson v. Dallas City Attorney's Off.*, 913 F.3d 464, 467 (5th Cir. 2019) (citing *Allen,* 449 U.S. 90, 101 (1980)). *Thompson* goes on to conclusively rule that "Federal courts *must* step into the shoes of state courts and afford preclusive effect where state courts would do so." 913 F.3d at 467.

31. Under this well-established standard of review, whether this case is precluded by the Full Faith and Credit clause is determined by the standard for res judicata in the state of Texas. Texas res judicate doctrine requires that: "(1) prior final judgment is on merits; (2) [the] parties in both

actions are same; and (3) [the] second action is based on claims that were raised—or could have been raised—in first action." *Thompson,* 913 F.3d at 470 (citing *Sims v. City of Madisonville*, 894 F.3d 632, 644 (5th Cir. 2018)); *see also Amstadt v. U.S. Brass Corp*., 919 S.W.2d 644, 652 (Tex. 1996). Though the Texas standard for enacting the res judicata effect is construed quite liberally and often contradictorily, the state's position on the exact situation in the instant case could not be clearer. In *Nguyen v. Desai,* a case with a nearly identical procedural background, the Defendant's special appearance in state court was granted and the case was dismissed for lack of personal jurisdiction. *See* 132 S.W.3d 115, 118 (Tex. App. 2004). The Texas Court of Appeals reversed the trial court's decision, definitively ruling that res judicata does not apply in cases like this one:

> Whether described as direct estoppel, collateral estoppel, or issue preclusion, an order dismissing claims for lack of personal jurisdiction precludes relitigation of the jurisdictional issues that were actually litigated and essential to the dismissal; however, such an order does not preclude a second action asserting the same claims in a court that can establish personal jurisdiction…

*Nguyen,* 132 S.W.3d at 118. *Accord Equitable Trust Co. v. Commodity Futures Trading Comm'n,* 669 F.2d 269, 272 (5th Cir.1992) (stating that dismissal for lack of jurisdiction does not trigger claim preclusion and that it is conclusive only as to the matters that were actually litigated and necessarily decided, under a principle that has been called both "direct estoppel" and "issue preclusion"); *Acree v. Air Line Pilots Ass'n,* 390 F.2d 199, 203 (5th Cir.1968) (stating that a dismissal for lack of jurisdiction is not conclusive as to all matters that could have been raised but that it is conclusive as to matters that were actually adjudged in determining that the court lacked jurisdiction).

**B. L&M is Not Barred by Collateral Estoppel.**

32. As cited above, *Nguyen* decidedly states that when considering the applicability of collateral estoppel, dismissal for lack of personal jurisdiction does not preclude a second action asserting the same claims if the Plaintiff can establish jurisdiction in this court. In response to

Defendant's Motion to Dismiss, as is required by the rules, Plaintiff has shown that this Court has authority to exercise jurisdiction over Defendant in its First Amended Complaint. *See* FED. R. CIV. P. 12(b)(2); (Am. Compl. ¶¶ 3–16). As such, now that L&M has established personal jurisdiction in this Court, Plaintiff is free to bring the same cause of action in a new case, so long as it doesn't trigger collateral estoppel. *See Nguyen,* 132 S.W.3d

33. The Fifth Circuit has held that collateral estoppel applies, preventing litigation of an issue, when "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision." *Bradberry v. Jefferson Cnty.,* 732 F.3d 540, 548 (5th Cir. 2013) (citation omitted). However, if the first standard, that the issues are identical, fails to apply, then the rest of the requirements are moot. To that end, collateral estoppel does *not* stop Plaintiff from litigating the issue of specific personal jurisdiction, as it pleads in this action, because it is not identical to the state action. (Am. Compl. ¶ 4.)

34. "Collateral estoppel requires that the issues in the first and second suits be identical." *Hammervold v. Blank*, 3 F.4th 803, 810 (5th Cir. 2021) (citation omitted). To be considered "identical," both the facts and "legal standard used to assess them" must be identical. *Id.* (citation omitted). "Part of that legal standard is the evidentiary standard against which the facts are judged." *Id.* at 811. Thus, to satisfy the requirement that legal standards be identical, both the previously brought claim and newly brought claim must be held to the same standard of review. *See id.*

35. Notably, the facts critical to the merits of Plaintiff's plea to jurisdiction are different in this case. In this action, Plaintiffs bring a new claim, violation of the DTSA, and in doing so invoke specific jurisdiction related to the actions on which the claim is based. (Am. Compl. ¶¶ 4, 53–64.) The issue of personal jurisdiction differs in the present case from the prior state case where the sole litigated issue was whether Defendant had general personal jurisdiction under the TEX. CIV.

PRAC. & REM CODE § 15.002(a)(1). (Pl.'s Original Pet. ¶ 5.) The issue in this action, however, is whether Defendant is subject to specific personal jurisdiction in relation to Plaintiff's DTSA claim.

36. These different issues have different legal standards, further differentiating the two. Texas uses a three-prong test to assess personal jurisdiction under the Texas long-arm statue, requiring

> (1) the nonresident defendant must purposefully do some act or consummate some transaction as to establish minimum contacts with the forum state, (2) the cause of action must arise from or be related to these contacts, and (3) the assumption of jurisdiction by the forum state must not offend the traditional notions of fair play and substantial justice.

*Niehaus v. Cedar Bridge*, 208 S.W.3d 575, 580 (Tex. App. 2006), *as modified* (May 5, 2006) (citation omitted).

37. By contrast, federal courts use the *Calder* "effects" test when specific jurisdiction arises from a tort claim, specifically if the Court does not find "minimum contacts" under the traditional test. In the instant case, Defendant is subject to specific jurisdiction under Plaintiff's DTSA claim, a tort claim, and as such would be subject to review under *Calder*. *See Calder,* 465 U.S. at 104 (1984). This test requires that

> (1) the defendant committed an intentional tort, (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort, and (3) the defendant expressly aimed its tortious conduct at the forum state such that the forum can be said to be the focal point of the tortious activity.

*Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) (citation omitted)). Plaintiff has already pled the facts necessary to establish specific jurisdiction under the *Calder* test in its First Amended Complaint and this Response, but the operative facts in this section are that the federal standard under which Plaintiff's plea for specific jurisdiction arising from a tort claim is far from identical to the state's standard under which Plaintiff's plea for general personal jurisdiction in the state action was reviewed. (Am. Compl. ¶ 4; Pl.'s Original Pet. ¶ 5.)

38. Further, the proceedings from which the litigation of the issue of jurisdiction arose in the state case induced the application of different legal standards for the review of jurisdiction in this case. In the state action, Defendant filed a special appearance, while in the instant case he filed a Motion to Dismiss. The state and federal standards of review for the issues brought up by these pleadings are different. In fact, the Fifth Circuit has specifically affirmed that a different standard of review applies to federal courts when assessing special appearances that makes them more amenable to specific jurisdiction arising from a tort claim than the state courts. *See Prod. Promotions, Inc. v. Cousteau,* 495 F.2d 483, 489–90 (5th Cir. 1974). Even though federal courts typically have to abide by the precedent set in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) (establishing that the burden of proof in jurisdictional issues is a matter of state law that the federal courts must also follow), the Fifth Circuit has held that cases in which the defendant has filed a Special Appearance under Rule 120(a) are not subject to the *Erie* Doctrine. *See* 304 U.S. 64; *see also Cousteau,* 495 F.2d at 489–90. Instead, the Texas rules construe Rule 120(a) as a procedural, rather than substantive rule, thereby avoiding the application of the *Erie* doctrine. Case law is clear about the exceptions, including the one created by Rule 120a, to following the precedent set by *Erie*, as the Supreme Court held, "*Erie* and its offspring cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts even though some of those rules will inevitably differ from comparable state rules." *Hanna v. Plumer,* 380 U.S. 460, 472-473 (1965).

39. Significantly, in establishing personal jurisdiction Texas state courts have "taken a restrictive view of the relationship between causes of action and contacts, seemingly to require virtually a direct link between [the] claim and [the] contacts." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007). In examining these same issues, federal courts have

established an evidentiary standard more amenable to Plaintiffs when establishing personal jurisdiction over a nonresident. In fact, Texas courts have differed from federal courts on the very issue presented in the instant case, of whether a tort that is committed electronically (i.e. via phone call) establishes jurisdiction under the long-arm statute. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 786–87 (Tex. 2005). Texas courts have ruled that alleging a tort that occurred via phone fails to confer personal jurisdiction. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 152 (Tex. 2013) ("although the [nonresident] allegedly committed a tort against a resident, its contacts with Texas were only receiving the phone call and transferring the vehicle… Neither contact constituted purposeful availment") (citing *Michiana*, 168 S.W.3d at 786–87). The Fifth Circuit has held in a case factually parallel to *Michiana* that "a single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Lewis v. Fresne,* 252 F.3d 352, 358–359 (5th Cir. 2001) (upholding the exercise of specific jurisdiction based on torts allegedly committed in a phone conversation) (citing *Brown v. Flowers Indus.,* 688 F.2d 328, 332–33 (5th Cir. 1982)); *see also Wien Air Alaska v. Brandt,* 195 F.3d 208, 213 (5th Cir.1999) ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."). As such, the legal standards in Texas state courts and federal courts regarding personal jurisdiction in cases such as this are quite clearly discrepant and therefore not subject to preclusion by collateral estoppel.

40. It is worth noting that the case Defendant cites in support of his argument for collateral estoppel as having the "exact same procedural circumstances" as the instant one, in fact, does not. (Def.'s Mot. 5); *see Boyne v. Harrison*, 647 S.W.2d 82 (Tex. App. 1983), *writ dismissed by agreement* (Oct. 5, 1983). Plaintiff is not relitigating the same issue, but brings this new action predicated on completely new jurisdictional grounds, pleading specific jurisdiction related to a

tort, not general jurisdiction under the Texas Civil Practices and Remedies Code. (Am. Compl. ¶ 4; Pl.'s Original Pet. ¶ 5.) Further, precedent holds that Plaintiff can bring a new action if it is based on different jurisdictional grounds or if Plaintiff has resolved the jurisdictional conflict on which the previous dismissal was based. Courts have repeatedly held that collateral estoppel does not bar bringing a new case if plaintiff is bringing the action under a different form of subject matter jurisdiction. *See, e.g., Prince Hotel v. Blake Marine Grp.*, 858 F. Supp. 2d 1287, 1299–1300 (S.D. Ala. 2012) (holding that plaintiff was not estopped from bringing a new action predicated on diversity jurisdiction because the original action was predicated on federal question jurisdiction). By the same logic, since this new action is predicated on different jurisdictional grounds, collateral estoppel should not apply. Additionally, a plaintiff is not barred from filing a new action by collateral estoppel if it has cured the jurisdictional defect on which the previous court dismissed the case. *See Lea v. United States*, No. 15-292C, 2016 WL 1697941 (Fed. Cl. Apr. 25, 2016) (holding that collateral estoppel does not bar a second-filed claim if the alleged cure is sufficient to repair prior jurisdictional defect). Since the instant case is predicated on different jurisdictional grounds than the state action, the jurisdictional defect for which the state case was dismissed has effectively been cured.

**C. The Venue Provision in Defendant's ICA Is Not Invalid.**

41. Defendant argues that the mere inclusion of one preposition ("of") somehow voids the entire venue clause in his ICAs. (Def.'s Mot. 12–13.) Firstly, this parsing is clearly a reach, showing that Defendant has no other grounds on which to dismiss the venue clause of the contract he twice signed. (Am. Compl. ¶¶ 5–6.) Further, the case that Defendant cites regarding this phrasing is hardly precedential. *See Dixon v. TSE Int'l*, 330 F.3d 396 (5th Cir. 2003). At least three federal courts have rejected this very argument, instead holding that the phrase "Courts of the State" is ambiguous as to whether it includes both state and federal courts. *See PersaudBramante*

*Apartments v. Underwriters at Lloyd's of London*, No. 23-CV-218 (ECT/DTS), 2023 WL 4473424 (D. Minn. July 11, 2023); *First State Bank of Nw. Arkansas v. Georgia 4-S Invs.*, 715 F. Supp. 2d 1301, 1303–04 (N.D. Ga. 2010), *aff'd sub nom. First State Bank of Nw. Arkansas v. Georgia 4-S Invs.*, 418 F. App'x 838 (11th Cir. 2011); *Columbia Properties Stuart v. Wilkes*, No. 05-14369-CIV, 2006 WL 8433949 (S.D. Fla. Mar. 21, 2006). Moreover, in construing a written contract in Texas, the courts have held that the primary concern is to ascertain the parties' true intentions as expressed in the instrument. *Xome Settlement Servs. v. Certain Underwriters at Lloyd's*, 384 F. Supp. 3d 697, 704 (E.D. Tex. 2019) (citation omitted). As a remote, international firm, L&M clearly intended to localize its otherwise global sphere of potential litigation to its principal place of business in Texas. (Am. Compl. ¶ 16.) Parsing the meaning of one word fails to trump the primary goal, which is to honor L&M's intentions in writing the clause. *See Xome*, 384 F. Supp. 3d at 704; *see also Webster*, 128 S.W.3d at 229; (Am. Compl. ¶¶ 15–16).

42. Additionally, Defendant argues that the venue provision is invalid because it is not proper under California law. (Def.'s Mot. 11–12.) As is obvious, California law is in no way relevant to this case and as such it is not proper for Defendant to bring his home state's rules as defenses against the rules of this Court. Most basically, Defendant was indeed given the ICA to sign, twice, which he did with no issues regarding the venue clause. (Am. Compl. ¶¶ 7–8; ICAs 3, 7.) L&M is a remote firm, at times having partners and independent contractors in all five continents; it is more than a stretch to suggest that L&M should be subject to the laws of the state in which a Defendant resides. (Am. Compl. ¶¶ 15–16.)

43. Even if the venue clause of the ICA were unenforceable, this would mean only that venue exists wherever it is appropriate under the law, which Plaintiff has established is before this Court.

## VI. CONCLUSION

44. As this Response and Plaintiff's First Amended Complaint establish, L&M has shown a prima facie case of specific personal jurisdiction in relation to its DTSA claim, L&M is not barred by res judicata or collateral estoppel from pursuing this action, and the venue provision in Defendant's ICAs does indeed support jurisdiction, or at the very least supports the standard needed for establishing it. Defendant's attempts to mischaracterize L&M as wrongfully pursuing this action misstate the facts: Plaintiff simply abided by the state court's order granting Defendant's own Special Appearance and then pursued the correct jurisdiction and venue in this Court. As is established in Plaintiff's First Amended Complaint, L&M was more than generous in its relationship with the Defendant and treated him fairly throughout the course of their working relationship. Defendant would paint L&M as a vindictive pursuant of frivolous litigation, but that could not be further from the truth. L&M seeks to repair the damages caused by Defendant's misappropriation of trade secrets, notwithstanding Defendant's own retaliatory and malicious suit in California after he was terminated by L&M. L&M prays that the Court see its true purpose in this suit – to repair the damages done to itself and its clients, directly caused by Defendant, and to uphold the applicable state and federal laws.

## VII. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that this Court deny Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, and grant Plaintiff the right to pursue its valid claims in this Court, where jurisdiction and venue are proper. Plaintiff further prays for such other and further relief, both general and special, at law or in equity, to which it may show itself to be justly entitled.

Dated: January 30, 2024, Respectfully submitted,

By: */s/ Feras Mousilli*
FERAS MOUSILLI

Attorney-in-charge
State Bar No. 24043837
S.D. Texas Bar No. 595648
**LLOYD & MOUSILLI, PLLC**
11807 Westheimer Road
Suite 550 PMB 944
Houston, TX 77077
Tel: (512) 609-0059
Fax: (281) 783-8565
*litigation@lloydmousilli.com*

**ATTORNEY FOR PLAINTIFF**
**LLOYD & MOUSILLI, PLLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record, pursuant to the District's ECF service rules on **January 30, 2024, *via electronic filing system*** on the following:

David S. Toy
*david.toy@davidtoylaw.com*
David Toy Law Firm
4309 Yoakum Boulevard, Suite 2050
Houston, Texas 77006
(713) 322-7911

/s/ *Feras Mousilli*
Feras Mousilli